# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIANNE KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 5903 |
| | ) |
| NORTHWEST COMMUNITY HOSPITAL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Northwest Community Hospital's (NCH) partial motion to dismiss. For the reasons stated below, we deny the partial motion to dismiss.

## BACKGROUND

Plaintiff Marianne King (King) allegedly began employment with NCH in March 1992. King contends that she suffers from several disabilities, including osteoarthritis, fibromyalgia, and pseudo-gout. In August 2006, King allegedly worked in the NCH Adult Day Center and had an outstanding work performance

1

history. King was allegedly 65 years old at that time. According to King, her supervisor began making comments about her age, asking when she was going to retire. Other employees also allegedly referred to King in her supervisor's presence as "Grandma." (Compl. Par. 18). At the end of 2007, King allegedly advised her supervisor that she was going to schedule hip replacement surgery. King contends that she made clear to her supervisor that King was willing to delay the surgery if taking medical leave from work would jeopardize her employment. King claims that her supervisor assured King that she would still have her job when she returned from the surgery. In the time leading up to King's surgery, the alleged comments about King's age by King's supervisor allegedly escalated. Her supervisor allegedly asked King if she was sure that she could still do the job, suggested that King retire, and told King that her job was hard for someone of her age.

King claims that after her surgery, her supervisor refused to allow King to return to work. In a conversation with her employer, King was allegedly informed that her position had been terminated and that her hours had been assigned to another part-time worker with whom King had shared her position prior to her surgery. King also claims that during the conversation with her supervisor, her supervisor referred to King's retirement age and "stability" as bases for her termination. (Compl. Par. 33). After King lost her position, King allegedly complained to NCH Human

Resources Department (HRD) about unlawful discrimination. HRD allegedly failed to reinstate King to her position, but purportedly offered to assist King with a job search at NCH. During this period, NCH allegedly presented King with a severance package that would require her to retire from employment at NCH. King contends that each time HRD located a job, King indicated a willingness to accept the job, but the job offer was rescinded by NCH for some reason. NCH also allegedly encouraged King to accept the severance package, and on June 27, 2008, NCH presented King with a severance agreement that terminated her employment as of July 1, 2008. King includes in her complaint a claim alleging discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, (Count I), an ADEA retaliation claim (Count II), a claim alleging discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, (Count III), an ADA failure to accommodate claim (Count IV), an ADA retaliation claim (Count V), and a promissory estoppel claim (Count VI). NCH has moved to dismiss Counts II-VI.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations

3

contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Twombly*, 550 U.S. at 557).

## DISCUSSION

I. ADA Discrimination Claim (Count III)

NCH argues that King cannot prevail on her ADA discrimination claim because she is not disabled under the ADA. NCH also contends that King is not a qualified individual under the ADA because King admits that she could not have worked for several months after her leave expired.

A. Whether King is Disabled

NCH argues that King has not alleged facts to show that she was disabled under the ADA. The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). However, the ADA does not protect every individual with an injury, aliment, or illness. *See Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005)(stating that "[t]he ADA is not a general protection for medically afflicted persons"). Under the ADA, the term "'disability' means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1).

1. Impairment that Limits Major Life Activities

NCH argues that King has not specifically identified what major life activity was limited by her impairments. The term "major life activities" is defined as tasks such as "caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, *walking*, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A)(emphasis added). Contrary to NCH's contention, King is not required to specifically plead all of the elements for her cause of action and thus was not required to specifically list in her complaint what major life activity was limited by her impairments. *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[m]atching facts against legal elements comes" after the pleading stage).

NCH also argues that King cannot simply rely on conclusory abstract statements that her impairments limited her major life activities. However, King pled facts that plausibly suggest that her major life activity of walking was substantially limited by the impairments listed in the complaint. For example, King alleges in the complaint that she suffered from osteoarthritis, fibromyalgia, and psuedo-gout. (Compl. Par. 9). King also alleges that she required hip replacement surgery to treat her osteoarthritis and psuedo-gout. (Compl. Par. 19). King further alleges that in the weeks before her surgery, she used a cane to assist her with walking long distances. (Compl. Parl. 24). Such facts, when taken as true, at least plausibly suggest that her major life activity of walking was substantially limited, and NCH has been provided with sufficient notice of the basis of her disability, which is all that is required at the

6

pleadings stage.

2. Ability to Perform Work

NCH also argues that King's own allegations indicating that King was able to perform her job show that King was never disabled. NCH points to King's allegations that her "disabilities . . . did not prevent her from performing her job . . ." and that she "discharged all of her duties in an excellent manner." (Compl. Par. 9-10). NCH also points to King's allegation that after her surgery, her doctor eventually released King "to work without restrictions. . . ." (Compl. Par. 31). NCH contends that such facts show that King was not disabled. It is true that a plaintiff can plead herself out of court. *See Benders v. Bellows and Bellows*, 515 F.3d 757, 767 (7th Cir. 2008). However, the above general statements regarding King's ability to do her job and her doctor's restrictions are not sufficient to show whether King was disabled. Also, the mere fact that King was able to perform her job would not negate the possibility that she was disabled. *See, e.g., Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002)(indicating that to assess whether an individual is disabled the under 42 U.S.C. § 12102(a)(1)(A), the court must look to impairment of major life activities not whether "[a]n impairment . . . interferes with work-related tasks"). As King correctly points out, an individual is required to be able to perform

her job in order to be a qualified individual with a disability under the ADA. 42 U.S.C. § 12111(8). In addition, there are no supporting facts to show that King's impairments were not such that they would not limit any major life activity, and a general statement about being released to work is insufficient to resolve such an issue.

The specific facts concerning King's physical limitations, her doctor's release, and the circumstances surrounding her ability to function before and after her surgery are all relevant in assessing whether King was disabled under the ADA. *See, e.g., Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007)(indicating that "substantially limits" means that a person "is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity" and that "[i]n deciding whether a person is disabled, we consider the nature and severity of the impairment," the duration or expected duration of the impairment, and "the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment")(internal quotations omitted)(quoting 29 C.F.R. § 1630.2(j)(2)). While the allegations identified by NCH, if supported by evidence, may be utilized by NCH in support of a motion for summary judgment, such a fact-

intensive analysis relating to King's alleged disability is premature at this juncture. *See id.*, 472 F.3d at 938 (stating that "whether or not a medical condition rises to the level of a disability is to be made on an individualized case-by-case basis"); *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008)(indicating that "'[w]hether a person has a disability under the ADA is an individualized inquiry'")(quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999)).

### 3. Regarded As Having Such an Impairment

NCH also contends that King has failed to allege facts that show that King was regarded as having an impairment that substantially limited one or more major life activities. For a "regarded as" ADA discrimination claim, a plaintiff must establish "that either: (1) the employer mistakenly believes the employee has a physical impairment that substantially limits a major life activity; or (2) the employer mistakenly believes that an actual, nonlimiting impairment substantially limits a major life activity." *Nese*, 405 F.3d at 641. As explained above, King has provided sufficient allegations that plausibly suggest that she had impairments that substantially limited her major life activity of walking. Thus, whether King can base her claim on being regarded as having a disability is a moot issue at this juncture. However, we note that King has presented allegations concerning her impairments

and NCH's knowledge of her impairments and surgery. (Compl. Par. 18, 19, 24). King presents allegations that her supervisor made remarks about her disabilities, and questioned King's ability to keep working, and suggested that King retire. (Compl. Par. 25). Such allegations plausibly suggest that King was regarded as having an impairment that substantially limited a major life activity.

Thus, based on the above, King has alleged sufficient facts to plausibly suggest that she suffered from a disability as defined in the ADA. We note, however, that we are merely ruling that King has pled sufficient allegations to state a claim at the pleadings stage. *See, e.g., Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996)(stating that "'[t]he purpose of a motion to dismiss is to test the sufficiency of the complaint'")(quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). At the summary judgment stage, King will need to support her ADA claim with sufficient evidence of her disability.

### B. Qualified Individual

NCH also contends that King is not a qualified individual. A "qualified individual" under the ADA is "'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Lee's Log Cabin, Inc.*, 546 F.3d at

445 (quoting 42 U.S.C. § 12111(8))(stating also that "[t]he individual must also 'satisf[y] the requisite skill, experience, education and other job-related requirements of the employment position'")(quoting 29 C.F.R. § 1630.2(m)). NCH argues that King has admitted that she took off work for her hip surgery between December 7, 2007 and March 6, 2008, and that the time she took off for surgery purposes exceeded her permitted 30-day leave. NCH contends that King admits that she was thus not qualified to return to work at the end of her authorized leave. NCH relies on King's allegations that she commenced medical leave on December 7, 2007, that on February 1, 2008, she was able to return to work with some restrictions, and that her supervisor refused to allow her to return to work until King obtained a full release to return to work. (Compl. Par. 27-29). However, such allegations do not show that King was unable to work during such time periods. King specifically contends that she was able to return to work with certain restrictions, which King contends were reasonable accommodations. (Compl. Par. 28). Such accommodations form the basis of her ADA failure to accommodate claim. King also clearly alleges that she was not informed that she would lose her position if she took off work for her surgery and that she relied on assurances that her job would be waiting for her. (Compl,. Par. 21, 22, 30). Thus, the extent of King's ability to work had she known that her job would have been lost is not fully addressed in the complaint, and it is

premature at this juncture to address such factual issues. Therefore, King has presented sufficient allegations to indicate that she was a qualified individual with a disability under the ADA and we deny NCH's motion to dismiss the ADA discrimination claim (Count III).

II. ADA Failure to Accommodate Claim (Count IV)

NCH also moves to dismiss the ADA failure to accommodate claim. For an ADA failure to accommodate claim, a plaintiff must establish "'(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'" *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008)(quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)); *see also Wright v. Illinois Dept. of Corrections*, 204 F.3d 727, 730 (7th Cir. 2000)(explaining that "[t]here are two types of disability discrimination claims under the ADA: disparate treatment claims and failure to accommodate claims").

NCH first argues that it cannot be held liable for failing to accommodate a disability since King did not have a disability under the ADA. As indicated above, in regard to the ADA discrimination claim, King has pled sufficient facts to plausibly suggest that she was disabled under the ADA. NCH also argues that King's failure

to accommodate claim should be dismissed because King does not allege how NCH should have accommodated her disability. However, NCH is again seeking a level of factual specificity that is not required at the pleadings stage. An analysis regarding appropriate accommodations can be made at the summary judgment stage based upon a full evidentiary record, but King was not required to provide specific details concerning the accommodations that would have been reasonable for her job. King alleges that she was able to return to work with restrictions. (Compl. Par. 28). A review of all the pertinent evidence regarding such restrictions is premature at this juncture. In addition, facts concerning King's efforts to request accommodations would be relevant to her failure to accommodate claim. Such evidence can be presented at the summary judgment stage, and King will need to point to sufficient evidence to support her failure to accommodate claim. Therefore, we deny NCH's motion to dismiss the ADA failure to accommodate claim (Count IV).

III.  Retaliation Claims (Counts II and V)

NCH also moves to dismiss the ADA and ADEA retaliation claims. Pursuant to the ADA and ADEA anti-retaliation provisions make it unlawful to retaliate against an individual because the individual complains about discrimination in violation of the ADA or ADEA. 42 U.S.C. § 12203(a); 29 U.S.C. § 623(d).

### A. Retaliatory Action

NCH contends that King has failed to identify any retaliatory adverse employment action to support retaliation claims. However, King alleges that when her position was filled with a younger employee without a disability, King complained to HRD that she was being discriminated against. (Compl. Par. 35-38). King also alleges that after she complained, NCH and HRD purportedly offered to help King find a new position at NCH, but that such assistance was illusory because each time King attempted to accept an offer for an open position, the job offer was no longer available. (Compl. Par. 39-42). King further contends that ultimately she was forced to accept a severance package and was terminated. (Compl. Par. 42-43). Such alleged actions by NCH could form the basis for retaliation claims.

### B. Timing of Complaint to HRD

NCH contends that King's allegations show that she made the complaint to HRD after her termination and thus her complaint could not be connected to her termination. However, NCH's argument is premised on an overly technical reading of the complaint. NCH points to King's allegation that she "immediately reported the discriminatory termination to" HRD. (Mem. Dis. 10); (Compl. Par. 36). NCH

contends that this shows that King complained after she had already been terminated. However, placed in the context of the entire complaint, it is apparent that the "termination" referred to by King was NCH's actions to remove from her position, not her ultimate formal termination from employment. In the facts leading up to the allegations about complaining to HRD, King explains that King's supervisor had informed her that King's position had been eliminated and that her hours had been given to another worker. (Compl. Par. 32). In leading up to the allegations about complaining to HRD, King also explains that "[t]he employee who was given [King's] hours is substantially younger than [King] and does not suffer from any disabilities." (Compl. Par. 35). NCH's reading of the complaint ignores certain facts, such as the fact that King alleges that, after a series of additional events that occurred after King had complained to HRD, she was forced to accept a severance package and her employment was terminated. (Compl. Par. 43). We also note that NCH is seeking to have inferences made in its favor, but for the purposes of the instant motion, King, as the non-movant, is entitled to have reasonable inferences made in her favor. *Thompson*, 300 F.3d at 753. Therefore, we deny NCH's motion to dismiss the retaliation claims (Counts II and V).

IV. Promissory Estoppel Claim (Count VI)

NCH moves to dismiss the promissory estoppel claim (Count VI). Under Illinois law, for a promissory estoppel claim, a plaintiffs must establish "that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Quake Const., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 100 (Ill. 1990)(noting that the "[p]laintiff's reliance must be reasonable and justifiable").

NCH argues that King has failed to plead that NCH made an unambiguous promise. However, as explained above, King is not required to specifically plead the elements for a cause of action. *Sanjuan*, 40 F.3d at 251. King alleges that when she advised her supervisor that she was going to need time off for surgery, her supervisor assured King that her job would be available when she returned. (Compl. Par. 19, 22). Such allegations plausibly suggest an unambiguous promise. Facts such as the precise words spoken by King's supervisor and the surrounding circumstances must be considered in assessing whether a promise was made to King and whether the promise was unambiguous. It is premature at this juncture to make such a determination.

NCH also contends that King has failed to plead that she detrimentally relied

on her supervisor's alleged statements. As explained above, King is not required to specifically plead the elements for a cause of action. King alleges that she told her supervisor that she would delay her surgery if her leave of absence would jeopardize her job. (Compl. Par. 21). King further alleges that she was assured by her supervisor that if King left work for surgery, her job would be available when she returned, and that King ultimately took a leave of absence based on such an assurance. (Compl. Par. 19, 22, 23). Such facts at least plausibly suggest reasonable and detrimental reliance on the part of King. Therefore, we deny NCH's motion to dismiss the promissory estoppel claim (Count VI).

## CONCLUSION

Based on the foregoing analysis, we deny NCH's partial motion to dismiss.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 7, 2010